79

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED

JAN 20 2006

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By: Deputy Clerk

**JOSHUA IRA SCOTT,**

**Plaintiff,**

**v.** **Case No. CIV 05-244-P**

**FARMERS INSURANCE COMPANY, INC., a foreign corporation, d/b/a FARMERS INSURANCE GROUP OF COMPANIES,**

**Defendant.**

**ORDER**

Before the Court is Defendant Farmers Insurance Company, Inc.'s Motion for Summary Judgement and Plaintiff's Response in opposition thereto. Because the Court finds that substantial questions of fact remain, and for reasons stated herein, Defendant's Motion is DENIED.

**Background**

Plaintiff Scott and Defendant Farmers were parties to a Broad Form Renter's Insurance Policy effective from June 18, 2004 to June 18, 2005. On December 19, 2004, Plaintiff reported a burglary of his rental home to the Wagoner County Sheriff's Department and provided a list of personal property he believed to have been stolen. On December 20, 2004, Plaintiff made an insurance claim with Defendant under his renter's insurance policy for the stolen property. Plaintiff gave a recorded statement to Defendant's claim adjuster on December 22, 2004. Plaintiff also provided Defendant with sworn Proof of Loss detailing the items of personal property claimed to have been stolen. During the course of Defendant's investigation into the

claim, Defendant discovered that Plaintiff had filed for bankruptcy in 2003, and that he had been convicted of some felonies and/or crimes of dishonesty sometime prior. Plaintiff also had six traffic violations charged against him between 1997 and 2003, a judgment against him in a 1998 automobile accident case. These discoveries, in addition to certain discrepancies in Plaintiff's insurance claim, led Defendant to conclude that Plaintiff's burglary claim was "suspicious." Defendant therefore ordered an Examination Under Oath (EUO), which was conducted by Eileen Morris on Defendant's behalf on March 11, 2005. After the EUO, Morris concluded that Plaintiff had made material misrepresentations in connection with his insurance claim. Defendant subsequently denied Plaintiff's claim on April 26, 2005, relying on the "false swearing" provision of the insurance contract which renders the policy void "if any insured has knowingly and willfully concealed or misrepresented any material fact or circumstance relating to this insurance before or after the loss." On June 8, 2005, Plaintiff filed the instant lawsuit, alleging breach of contract and bad faith against Defendant.

## Discussion

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249. The presence of a genuine issue of material fact defeats the motion.

**I. Breach of Contract Claim**

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff intentionally and deliberately made material misrepresentations in connection with his insurance claim, thereby nullifying his policy under the "false swearing" provision. According to Defendant, Plaintiff's false statements include: (1) Plaintiff's income was $25,000.00 as opposed to $8000.00; (2) Plaintiff was unaware of a lawsuit filed against him by Debra Rush in 1998; (3) Plaintiff owned certain property as of August 2003 that he did not actually own; and (4) Plaintiff never owned a shotgun although he sought payment for same in his insurance claim. [Def. Mtn. at 14.] Plaintiff offers different interpretations for each alleged misrepresentation, all of which are supported in the record, and thereby effectively denies that such statements are, in fact, undisputedly false. For example, with regard to the third allegation, Plaintiff admitted that the property listing in his August 2003 bankruptcy filing may have been false, but did not admit that his December 2004 insurance claim was likewise false. Plaintiff also offered plausible explanations for the difference in income reported to Defendant ($25,000.00) and that reported on his tax returns ($8000.00).

Further, as both parties note, "[t]he materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." Wagnon v. State Farm Fire & Cas. Co., 146 F.3d 764, 768 (10th Cir. 1998). If reasonable minds could differ as to the materiality of the misrepresentations, summary judgment is inappropriate. Id. It is well settled that questions relating to the insurance claim are material. Clafin v. Commonwealth Ins. Co., 110 U.S. 81, 96-97 (1884). Courts have held that false statements about the acquisition of property, the value of property, or the true ownership of property are

material as a matter of law. *See, e.g.*, Wagnon, 146 F.3d at 769; Dadurian v. Underwriters at Lloyd's, London, 787 F.2d 756, 759-60 (1st Cir. 1986); Passero v. Allstate Ins. Co., 554 N.E.2d 384, 389 (Ill. Ct. App. 1990). The Court fails to see, however, how Defendant's second allegation – that Plaintiff falsely claimed to be unaware of a lawsuit filed against him in 1998 – falls under this rubric. The Court therefore finds that the materiality of this statement – at the very least – should be left to the trier of fact. Because of the factual distinctions noted above, the materiality of the other statements, while certainly more closely related to the insurance claim itself, should nonetheless also be left to the trier of fact.

Finally, the Court notes that while Plaintiff admitted that he intended for Defendant to rely on the statements he made in his insurance claim, and to Defendant's agent, and at his Examination Under Oath, he has never admitted outright that his statements were false or that he intended to deceive Defendant. In a case similar to this, the Wagnon court noted:

> Mr. Wagnon appears to have admitted that his misstatements were made knowing that they were false. . . . Mr. Wagnon seems to acknowledge he knew his statements were false when made, explaining that he gave such information to make things less complicated, and conceding that he might have lied. Mr. Wagnon also admitted . . . that he concealed his father's phone number, in part, to prevent State Farm from contacting him and learning the truth about the tools.

Wagnon, 146 F.3d at 770. The Court does not find any parallel facts here, despite Defendant's curious assertion that "[t]he facts of fraud here are much stronger" than those in Wagnon. [Def. Mtn. at 19.]

In sum, the Court finds that Defendant has not met the summary judgment standard on Plaintiff's breach of contract claim, and Defendant's Motion is therefore DENIED as to said claim.

## II. Bad Faith Claim

The central issue in a bad faith claim is "whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." Badillo v. MidCentury Ins. Co., 121 P.3d 1080, 1093-94 (Okla. 2005). The reasonableness of the insurer's actions are based upon the insurer's knowledge and beliefs at the time the claim is being reviewed. Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla. 1991). "[I]f there is conflicting evidence from which differing inferences may be drawn regarding the reasonableness of the insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact, by a consideration of the circumstances in each case." McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981).

Plaintiff also points out in the context of his bad faith claim that an insurer must conduct an investigation "reasonably appropriate under the circumstances." Buzzard, 824 P.2d at 1109. Here, reasonable minds could – and seemingly do – differ as to whether Defendant's investigation was appropriate. For example, Defendant's investigator, Eileen Morris, relied primarily upon public records involving Plaintiff, such as criminal records and bankruptcy filings, to supplement her investigation and examination under oath, while Plaintiff's consultant, Diane Luther, indicates that she would have requested gift letters to document ownership of certain of Plaintiff's possessions, which Defendant did not do. As stated above, Plaintiff also offers different interpretations for each alleged misrepresentation identified by Defendant as justifying its decision to deny Plaintiff's claim, which could lead to differing opinions as to the reasonableness of Defendant's conduct. For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's bad faith claim is DENIED.

## Conclusion

The Court finds that genuine issues of material fact remain on these claims. Defendant's Motion is therefore DENIED in its entirety.

IT IS SO ORDERED this 20th day of January 2006.

James H. Payne
Chief United States District Judge